WATSON v. BETTMAN et al.

(Circuit Court, D. West Virginia. July 19. 1898.)

1. PARTNERSHIP—APPOINTMENT OF RECEIVER.

A receiver will be appointed at the instance of a partner when it appears that the firm is insolvent, that its accounts have been confused by the defendant partners with those of other firms of which they are also members, that they have fraudulently procured assignments to be made by such other firms, and have confessed judgments in favor of their relatives, which can only be satisfied out of their partnership interest.

2. STATE AND FEDERAL COURTS—CONFLICTING JURISDICTION—ASSIGNMENTS FOR CREDITORS—RECEIVERS.

The mere fact that an assignee for benefit of creditors has qualified before a New York state court. which has accepted his bond, does not give that court jurisdiction, so as to prevent a federal court from appointing a receiver for the assigned property.

3. RECEIVERS—SELECTION AND APPOINTMENT.

A receiver appointed in a suit by a partner against his co-partners charging them with mismanagement and fraudulent misapplication of

assets, should be disinterested; and the court will not appoint one, however well qualified in other respects, who is interested in judgments confessed by defendants, which can only be satisfied out of their interests in partnership assets, and who is connected by marriage with various parties secured by deeds of assignment made by defendants.

A. Leo Weil, A. Dewey Follett, and B. Mason Ambler, for plaintiff.

Frank B. Enslow, John T. McGraw, and John G. McCluer, for defendants.

V. B. Archer, for Joseph Louchheim.

JACKSON, District Judge. On the 21st day of May, 1898, Gilbert L. Watson filed his bill in equity against Marcus A. Bettman, David Bettman, Emanuel W. Bloomingdale, in his own right and, as trustee, and Marcus A. Bettman and David Bettman, executors of the last will and testament of Meyer H. Bernheimer, deceased, and Mamie Mann, executrix of the said Bernheimer, deceased. The bill charges that prior to the month of December, 1897, Watson was a member of the firm of Bettman, Watson & Bernheimer, which firm was the owner of certain oil lands, oil properties, and leaseholds in the states of Ohio, Indiana, West Virginia, and Pennsylvania, and that the said firm also operated a manufacturing plant in Pleasants county, W. Va., and a general supply store in the city of Parkersburg; that Bernheimer died in the month of December, 1897, and that the business, after his death, was carried on in the partnership name by the surviving partners; that the partnership was engaged in the production of oil, and was dealing in oil-well supplies; that the partners of the firm each held a one-fourth interest; that prior to the 5th day of March, 1898, the plaintiff and his associates had been engaged for more than eight years in the oil business. and that they had acquired a large amount of property, and had drilled upon their various properties in the different states over 300 wells, most of them being productive and remunerative, and from which large quantities of oil have been taken and sold, realizing to the firm from $10,000 to $25,000 monthly; and that, in addition to the revenue realized from this source, the firm had sold leaseholds and other properties, amounting to $330,000,—making a total of about $600,000, of which $300,000 is claimed to have been net profit; and that all the funds realized from this source had gone into the control of Stettheimer & Bettman, who are bankers and brokers. The bill charges that the Bettmans are brothers, and that their wives are sisters of Bernheimer, and that David Bettman was a member of the firm of Stettheimer & Bettman, consisting of Henrietta Stettheimer and David Bettman. The bill further charges that there was another firm doing business under the name of Stettheimer & Co., composed of Joseph Stettheimer and Marcus and David Bettman; that, Joseph Stettheimer having died, the business was continued under the name of Stettheimer & Co. by the surviving partners; that Stettheimer & Co. were owners of oil property in Pennsylvania. It appears from the bill that Watson, the plaintiff in this action, had control of all the operations in the oil fields, as

well as of the manufacturing supply company, and that the management of the accounts of the firm and its finances were intrusted to his associates, who assured the plaintiff from time to time that the business was profitable, and that the accounts were accurately and honestly kept. It is charged that the accounts of Bettman, Watson & Bernheimer were not kept in separate books, but that they were kept in the books of Stettheimer & Bettman, in New York City; and when the plaintiff made a demand that separate books should be opened and kept of the transactions of the partnership, his associates promised to do so, but the promise, to this date, has never been kept. The plaintiff also demanded and tried to get a settlement of the co-partnership business, but has never been able to do so. It is further charged that there are five different firms composed of the Bettmans, Watson, and others: First, the firm of M. A. and D. Bettman, composed of M. A. Bettman and David Bettman; second, the firm of Stettheimer & Bettman, composed of Henrietta Stettheimer and M. A. Bettman; third, the firm of J. Stettheimer & Co., composed of the executors of J. Stettheimer and the Bettmans; fourth, Bettman & Watson, composed of M. A. and D. Bettman and Gilbert L. Watson; fifth, the firm of M. A. Bettman, David Bettman, and Gilbert L. Watson, composing the partnership of Bettman, Watson & Bernheimer. That these five different firm are composed of the Bettmans, Watson, Bernheimer, and Stettheimer; the Bettmans being members of all the firms, while Watson is only a member of two of them. Bettman, Watson & Bernheimer is the oil firm, whose business is the subject-matter in controversy in this case, being the same firm that has been carried on in the name of Bettman, Watson & Bernheimer since the death of Bernheimer. It is charged that the accounts of Bettman, Watson & Bernheimer have been kept upon the books of Stettheimer & Bettman, one of the other firms, and have become so interwoven and entangled with the accounts of the other firms that it is difficult, at this time, to determine what moneys and revenues derived from the oil properties of the firm of Bettman, Watson & Bernheimer belong to it. It is not alleged in the bill that the firm of Bettman, Watson & Bernheimer is insolvent, but that the revenues have been misappropriated and misapplied in such a manner as to deprive the plaintiff in this action of his rights and interest in the co-partnership property and its revenues; but it is admitted and claimed in the answer of Bloomingdale, the trustee in these various assignments, that the oil firm of Bettman, Watson & Bernheimer is insolvent. It is charged that L. G. Bloomingdale has large judgments against the Bettmans, amounting to about $70,000; that E. W. Bloomingdale, the trustee in these various assignments, is interested in the business of Bloomingdale Bros., as appears from the bill, and his answer does not deny, but seems to admit, it, and the allegation of the bill is sustained by the testimony of the Bettmans. It appears that there are judgments amounting to nearly $600,000 against the Bettmans and other parties, for which the interest of the Bettmans in the co-partnership of Bettman, Watson & Bernheimer is liable. Stettheimer & Bettman claim directly

against the firm of Bettman, Watson & Bernheimer $192,000, and, in addition to this claim, it is claimed that the firm of Bettman, Watson & Bernheimer is liable as indorser for said firm for $109,-000. In addition to the allegations of the bill heretofore referred to, it appears that sundry judgments have been rendered in the courts of New York by confession against the firm of Stettheimer & Bettman, and other firms of which Bloomingdale is assignee, in favor of the wives of the Bettmans. Two judgments alone against Stettheimer & Bettman amount to $236,327, which judgments are expected to be made and satisfied out of the interest of the Bettmans in the firm of Bettman, Watson & Bernheimer.

It is apparent from this state of facts that E. W. Bloomingdale occupies a dual relation under his appointment as trustee, and he must, on the one hand, enforce collection of the claims of Stettheimer & Bettman against the property of the firm of Bettman, Watson & Bernheimer, one of the judgments being a judgment in favor of his own brother, which it is claimed can only be satisfied out of the individual interest of the Bettmans in the firm property of Bettman, Watson & Bernheimer; while, on the other hand, it will be his duty, as trustee, to contest the claims of Stettheimer & Bettman against the firm of Bettman, Watson & Bernheimer; and, if he was appointed as receiver of this property, the same dual relation would continue to exist. It further appears that on the 5th day of March, 1898, the five firms, which included the firm of Bettman, Watson & Bernheimer, made an assignment, in the state of New York, of all their property, to E. W. Bloomingdale, trustee, for the benefit of their creditors, which assignment the bill alleges was procured through fraudulent misrepresentations as to the insolvency of the co-partnership of Bettman, Watson & Bernheimer. Upon this state of facts the defendants E. W. Bloomingdale and Marcus A. Bettman and David Bettman, executors of the last will and testament of Meyer H. Bernheimer, deceased, filed their demurrers to the bill, setting up five different grounds of demurrer, and praying the judgment of the court upon the same, and that the bill be dismissed.

In the view the court takes of this case, it seems that all the grounds of demurrer are substantially embraced in the first and second assignments. The first assignment is, virtually, a want of equity upon the face of the bill. This ground of demurrer invokes the consideration of the court as to whether the allegations upon the face of the bill justify the court in the appointment of a receiver. From the inspection of the bill and answer, and the assignment made on the 5th day of March, 1898, to E. W. Bloomingdale, the court must reach the conclusion that the co-partnership was insolvent. It is true, the bill does not allege insolvency, but the answer of the trustee not only claims it, but admits it, and the evidence of the Bettmans, taken in support of the answer, tends to establish the truth of the allegation. This alone, independent of any other grounds, is sufficient to justify a court of equity in taking possession of the property, and putting it in the hands of a receiver. But the bill charges a fraudulent misapplication and an

improper conversion and waste of the assets of the co-partnership by the defendants Bettmans and Bernheimer, who had charge of this branch of the business at their New York office. This charge must be accepted as true, and, if true, ought not a court of equity, when appealed to, interpose, to protect the right of any member of this co-partnership as against other members, who, by their action, have so misapplied the revenues arising from the management of the property as to place the co-partnership in a condition approaching insolvency, if not altogether insolvent? I think so. There can be but one answer to the question. The Bettmans, Watson, and Bernheimer were equal partners in this property, each owning a one-fourth interest. This, in the opinion of the court, is another reason why the court should exercise its powers for the protection of the property. A further allegation in the bill is that there are heavy judgments at law against the members of the co-partnership, which, if enforced, would be ruinous to the value of the property, and entail a great loss to its owners; and, further, that there have been judgments obtained, by confession, against the Bettmans, in favor of their sisters, which can only be satisfied out of their individual interest in the co-partnership property. This allegation, coupled with the fact that it is claimed that the revenues of this co-partnership have gone into the hands of other co-partnerships in which the Bettmans and Bernheimer are interested, but in which the plaintiff, Watson, has no interest whatever, would seem to justify a court of equity in taking charge of the property. The court is of the opinion that the various allegations of the bill, being accepted as true, are sufficient in law to maintain this action, and to justify the court in appointing a receiver, and for this reason the first ground of demurrer is overruled.

The second ground of demurrer is that the assignee, Bloomingdale, qualified under the laws of the state of New York, in the supreme court of the city and county of New York, and gave bond in that court, and was, at the time of the filing of the bill in this case, acting under and by virtue of the orders of the supreme court of New York, which action, it is claimed, conferred jurisdiction on the court over the property of this defendant co-partnership. I do not concur in this position. The appointment and qualification of Bloomingdale, as assignee, under the deed of assignment, was purely a statutory proceeding under the laws of the state of New York, which required him to go before the supreme court of New York, and file his bond, to be approved by the court, before entering upon his duties as such assignee; was not an order of the supreme court for the city and county of New York, but was merely the result of the deed of assignment executed to him on the 5th day of March, 1898. This act upon the part of that court was not a judicial, but purely a ministerial, one, to comply with the requirements of the statute under which the assignment was made. It was in no sense a judicial proceeding. No order of the court was necessary, under the statute, to put the assignee in possession of the property transferred under the deed of assignment. No ju-

dicial proceeding was instituted in the court by which it became the duty of the court to take cognizance and possession of the property. No litigation has grown out of the assignment by which it became necessary for that court to take possession of the property. It is therefore apparent that there was no seizure, either actual or constructive, of the property embraced in the assignment of March 5, 1898, to Bloomingdale, under the order of the supreme court of the state and city of New York. The jurisdiction of that court did not attach, and, so far as this court is advised, up to this date, no judicial proceeding of any character has been instituted in that court that would give it jurisdiction over the property in question. I must hold, therefore, that the jurisdiction obtained under the bill filed in this case was first acquired over the property and persons of the defendant co-partnership, and that the second ground of demurrer must, therefore, be overruled.

It is apparent from the bill that the interests of all the parties connected with this property are so conflicting that it is necessary that the management of this property should be confided to some one person to control and manage it for all the interests concerned. That the property is a very large and valuable estate no one can question; and it is claimed if it is properly managed that it will not only discharge all liabilities against it, but will, in the end, prove to be very remunerative to the owners. Courts of equity appoint receivers for the assets of a firm whenever there is any misconduct upon the part of the defendants, or where partners themselves are wholly unable to agree as to the management of the property and the settlement of the partnership affairs, upon the part of the defendants in interest. Pom. Eq. Jur. § 1333. In this case there are charges of insolvency, fraudulent misapplication of the revenues, and inability upon the part of the defendant co-partnership to discharge heavy claims existing against it and judgments against its members. Irreconcilable differences exist between the members of the co-partnership as to the management of the property, and under these circumstances this court is appealed to to take charge of this property, and appoint a receiver to manage it for the benefit of all the parties concerned. In the view I take of this case, it is the duty of the court to grant this prayer of the bill.

The next question for the consideration of the court is, who shall be the receiver in this case? The court is requested to appoint Mr. E. W. Bloomingdale, the assignee under the deed of assignment of March 5, 1898, as the receiver in this cause. This request is supported and fortified by numerous letters from prominent men of the city of New York who are well acquainted with his character as a man and his reputation for integrity in business circles. So far as the personal character of Mr. Bloomingdale is concerned, the court frankly admits that the evidence filed in this case in support of his claim for the position of receiver satisfies it that he is a man of high character and unquestionable integrity, but this qualification is not the only indispensable one for such a position. A receiver should have no personal interest in the controversy, or

in the property in his charge, which would prevent the exercise of his duties and powers without favor to any of the parties. He has the custody and management of the property which is the subject-matter of judicial action. Can it be said, where a man is interested in judgments against the property of a co-partnership, and is connected by marriage with the various parties who are secured under the deed of assignment, and who is charged with being cognizant of the fraudulent misapplication of the assets of the defendant co-partnership by the defendant members of the co-partnership in this suit, that he is such a disinterested party as would justify the court in selecting him to take the control and management of the property which is the subject-matter of litigation in this cause? A statement of the facts seems to the court to answer the question. While I do not in any wise reflect, by my action, upon the character and standing of Mr. Bloomingdale, nor upon his character for integrity as a business man, which, I have said, is beyond question, still I consider it to be my duty to select some one who has no personal interest in the property whatever, and whose control and management of it could not be influenced by any personal interest in the property. But there is another reason why the court should not appoint Mr. Bloomingdale. The property involved in this suit lies in four different states, no portion of which is in the state of New York, and, so far as the court is advised, there are no assets of any kind whatever in the city or state of New York, and all the revenues that are to be collected and disbursed by the receiver should be held and disbursed under the orders of the court of this district. If Mr. Bloomingdale were appointed receiver, the revenues would be carried to the state of New York, outside of the jurisdiction of this court; and when, by the decree of the court they were to be distributed, they would be distributed from that point. This is a potential consideration, which controls the action of the court against appointing a receiver outside of this district. Mr. Bloomingdale is a resident of the state of New York, many hundreds of miles away from the location of the properties. He is largely interested in the mercantile business, and, as the evidence discloses in this case, has nearly 2,000 clerks in his employ. He could hardly be expected, under such circumstances, to give the close attention to his business as receiver that the court would require of one having charge of property of the magnitude and character of this. His interest in claims against parties of the co-partnership makes him an interested, instead of a disinterested, party. The receiver should be in touch with the court, so that, when the court finds it necessary to pass an order in vacation, he can place his hands upon him. I recall no instance, in my long experience on the bench, in which I have ever appointed a receiver outside of the limits of my district, except as ancillary to a proceeding in another court. This rule has always been enforced by me, and I have never seen any reason for deviating from it. Under these circumstances I must decline to appoint E. W. Bloomingdale receiver.